150 A.3d 17

**Richard A. SPRAGUE, Hon. Ronald D. Castille, and Hon. Stephen Zappala, Sr., Appellants**

v.

**Pedro A. CORTES, Secretary of the Commonwealth of Pennsylvania, in his Official Capacity, Appellee**

No. 100 MAP 2016

Supreme Court of Pennsylvania.

DECIDED: October 25, 2016

Jordann Richard Conaboy, Brooke Spigler Cohen, Richard A. Sprague, William Howard Trask, Sprague & Sprague, Philadelphia, PA, for Appellant.

Kathleen Marie Kotula, Timothy E. Gates, PA Dept. of State, Harrisburg, PA, for Appellee.

## ORDER

PER CURIAM

**AND NOW,** this 25th day of October, 2016, Appellants' emergency application to expedite disposition of this matter is **GRANTED.** Appellants' application for leave to file a reply to answer is **GRANTED.** The Court being equally divided, the Order of the Commonwealth Court is **AFFIRMED.**

Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justice Baer files an opinion in support of affirmance in which Justices Donohue and Mundy join.

Justice Todd files an opinion in support of reversal in which Justices Dougherty and Wecht join.

Justice Dougherty files an opinion in support of reversal in which Justices Todd and Wecht join.

Justice Wecht files an opinion in support of reversal in which Justices Todd and Dougherty join.

## OPINION IN SUPPORT OF AFFIRMANCE

JUSTICE BAER

Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala ("Appellants") appeal from the Commonwealth Court's order dated October 5, 2016, which granted summary relief in favor of Secretary Pedro A. Cortés ("Secretary") and dismissed Appellants' petition for review. Appellants' petition for review challenged the legality of the November 2016 general election ballot question, as framed by the Secretary, which seeks to amend the mandatory judicial retirement age set forth in Article V, Section

16(b) of the Pennsylvania Constitution.[1] For the reasons that follow, we would affirm the Commonwealth Court.

The record establishes that on July 21, 2016, Appellants filed a complaint in the Commonwealth Court challenging the Secretary's phrasing of the ballot question. Appellants sought an order declaring the ballot question unlawful, enjoining the Secretary from placing the question on the November 2016 ballot, and directing the Secretary to present the question to the electorate in a manner that advises voters that the compulsory judicial retirement age would be raised from 70 to 75. Later that day, Appellants filed in this Court an emergency application requesting that we assume plenary jurisdiction over the action pursuant to 42 Pa.C.S. § 726. See Appellants' Emergency Application for Extraordinary Relief at 11 (asserting that "[i]t is virtually certain that any order issued by the Commonwealth Court in this matter would be appealed to this Court. Consequently, [Appellants] respectfully submit that this Court should assume immediate plenary jurisdiction over the matter in order to resolve it in advance of the November 8, 2016 general election."). This Court granted Appellants' emergency application on July 27, 2016, and an expedited briefing schedule was established.

As there were no factual disputes, the parties filed applications for summary relief. On September 2, 2016, this Court entered a unanimous *per curiam* order, stating that, because the Court was evenly divided as to which parties were entitled to summary relief, we lacked authority to grant the requested relief and, thus, maintained "the *status quo* of the matter prior to the filing of the lawsuit." Sprague v. Cortés, No. 75 MAP 2016, 145 A.3d 1136, *per curiam* order dated Sep. 2, 2016 (citing Creamer v. Twelve Common Pleas Judges, 443 Pa. 484, 281 A.2d 57 (1971) (holding that where this Court was evenly divided in an original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate dis-

1. Article V, Section 16(b) currently provides, in relevant part, that "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years." PA. CONST. art. V, § 16(b).

position was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter)).

This author filed an opinion in support of granting summary relief to the Secretary, which was joined by Justices Donohue and Mundy. Additionally, an opinion in support of granting summary relief to Appellants was filed by Justice Todd, and joined by Justice Dougherty and, in part, by Justice Wecht. Justice Wecht also filed a separate opinion in support of granting summary relief to Appellants. The opinions themselves had no precedential effect, but were issued to explain the various views regarding whether the ballot question was unlawful. The equal division among the Court on the question of whether Appellants were entitled to declaratory and injunctive relief was the basis for the Court's ultimate judgment, maintaining the *status quo*, which judgment was rendered unanimously by the concurrence of all Justices.

Appellants thereafter filed an application for reconsideration, requesting that we remand the matter to the Commonwealth Court for that court to examine the exact question that this Court already reviewed. On September 16, 2016, this Court entered a *per curiam* order denying Appellants relief on the ground that they did not present a compelling reason for reargument but, rather, sought a new avenue of relief. We emphasized that the grant of Appellants' request for extraordinary jurisdiction pursuant to Section 726 of the Judicial Code removed the case from the lower court so that this Court could impose a final order in the matter. See 42 Pa.C.S. § 726 (providing that "the Supreme Court may, on its own motion or upon the petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done"). This Court's order denying reconsideration further distinguished the deadlock on the Court, which related to whether Appellants had a clear right to the requested relief, from the Court's unanimous judgment in the matter, which

maintained the *status quo* prior to the filing of the litigation. We concluded that a remand for the Commonwealth Court to consider the case anew would be unprecedented, unsupported by legal authority, and outside the scope of Pa.R.A.P. 2543. Justice Todd filed a dissenting opinion to the *per curiam* order, which was joined by Justice Wecht, in which she opined that this Court should remand the matter to the Commonwealth Court for it to address the legality of the ballot question's phrasing.

On September 19, 2016, Appellants filed in the Commonwealth Court a second petition for review in the nature of a complaint for declaratory and injunctive relief against the Secretary, raising the identical challenge and seeking the identical relief as they did in the original case before this Court. The Secretary sought dismissal of Appellants' petition, contending that: (1) the action was barred by the doctrines of *res judicata*, laches, and "law of the case;" (2) relitigation of this Court's September 2, 2016 order would violate Article V, Section 2 of the Pennsylvania Constitution; (3) the ballot question is fair, accurate, and clearly apprises voters of the question to be voted on; (4) the Secretary and Attorney General are entitled to act free of interference under the political question doctrine; and (5) Appellants are not entitled to injunctive relief. Both parties again filed applications for summary relief.

On October 5, 2016, in a single judge memorandum opinion authored by President Judge Mary Hannah Leavitt, the Commonwealth Court granted the Secretary's application for summary relief, denied Appellants' application for summary relief, and dismissed Appellants' petition for review, finding that the action was barred by the doctrine of *res judicata*. The court did not address the Secretary's additional objections to the Commonwealth Court's reconsideration of the ballot question challenge. The court reasoned that four conditions must exist for *res judicata* to apply: (1) identity of the issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. Commonwealth Court Slip Op. at 6

(citing Safeguard Mutual Insurance Company v. Williams, 463 Pa. 567, 345 A.2d 664, 668 (1975)). The Commonwealth Court found all of these requisites satisfied as the two actions (*i.e.*, the action adjudicated by this Court by order dated September 2, 2016 and the action filed in Commonwealth Court on September 19, 2016) shared identity of issues, causes of action, and parties. Finding that this Court adjudicated the claims raised by the same parties in its September 2, 2016 *per curiam* order, the Commonwealth Court held that the doctrine of *res judicata* precludes that court's reconsideration of the same matter.

The Commonwealth Court rejected the contention that, because this Court was divided regarding the legality of the ballot question, Appellants never received a final adjudication on the merits of their claim, which is necessary for *res judicata* to apply. Relying upon this Court's September 16th order denying reconsideration, the Commonwealth Court stated that "[t]he Supreme Court has held that [Appellants'] issues and claim have been finally adjudicated. This [c]ourt may not revisit that holding." Commonwealth Court Slip Op. at 9.

On October 11, 2016, Appellants filed a notice of appeal in this Court, as well as an emergency application seeking an expedited disposition without further briefing. Ignoring that the Secretary objected to the Commonwealth Court's consideration of Appellants' petition for review for a myriad of discrete reasons not addressed by the Commonwealth Court due to its finding that the case was precluded by the doctrine of *res judicata*, Appellants now request that we reverse the Commonwealth Court's dismissal of the petition based on *res judicata* and direct that court to adjudicate their challenge to the ballot question, regardless of the validity of the Secretary's alternative objections.

Appellants' entire premise on appeal mirrors the position taken by the dissenting Justices in the reconsideration matter, *i.e.*, because this Court was evenly divided as to whether the ballot question suffers from a legal impediment, Appellants never received a final judgment on the merits of their claim,

and thus, their current action is not precluded. Citing language from this Court's September 2nd order indicating that we lacked authority to grant the requested relief due to an inability to reach consensus, Appellants submit that we likewise lacked authority to adjudicate the merits of their claim, which is a prerequisite to the application of *res judicata*. They further rely on distinguishable case law suggesting that the legal effect of a deadlock in a jurisdiction's highest appellate court is the same as if no appeal had been taken. From this tenet, Appellants conclude that this Court's September 2nd order maintaining the *status quo* is a nullity, having no legal effect whatsoever. They argue that the facts presented should be viewed as though this Court never granted their request for extraordinary jurisdiction, leaving the matter ripe for adjudication by the Commonwealth Court.

In his answer to Appellants' emergency application, the Secretary joins Appellants' request that this matter be resolved as expeditiously as possible, without further briefing, and attaches his brief filed in Commonwealth Court. He contends that we should affirm summarily the well-reasoned decision below, which held that this Court's unanimous September 2nd *per curiam* order maintaining the *status quo* effectively denied the relief Appellants sought and constitutes a final adjudication on the merits for purposes of *res judicata*, rather than the absence of a decision as Appellants suggest. The Secretary asserts that the legal effect of an evenly divided judicial body in Pennsylvania is that the requested relief is denied, both implicitly and as a matter of law. Accordingly, he submits, the Commonwealth Court may not revisit this Court's determination, to which the parties are bound.

In addition to claims alleging preclusion of reconsideration of the ballot question issue based upon the doctrines of laches, "law of the case," and political question, the Secretary further contends that Appellants attempt to have the Commonwealth Court usurp this Court's "supreme judicial power of the Commonwealth" offends the constitutionally established structure of the judiciary as the September 2nd order declined to grant Appellants the very relief they subsequently sought in

the Commonwealth Court. See PA. CONST. art. V, § 2(a). He argues that what Appellants essentially seek is for the Commonwealth Court to be this Court's tiebreaker in contravention of the structure of the unified judicial system. Accordingly, he requests that we affirm the order of the Commonwealth Court dismissing Appellants' petition for review.

We agree with the Secretary that the Commonwealth Court was correct in holding that this Court's September 2nd order maintaining the *status quo* is a final order effectively declining Appellants' requested relief and, thus, constitutes a final judgment on the merits for purposes of *res judicata*. As Justice Wecht points out in his Opinion in Support of Reversal, "[i]t is axiomatic that in order for … *res judicata* to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment." Opinion in Support of Reversal, Wecht, J., at 420, 150 A.3d at 29 (quoting County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 544 Pa. 541, 678 A.2d 355, 359 (1996)). Here, the various opinions attached to this Court's September 2nd unanimous *per curiam* order clearly establish that Appellants actually litigated in this Court the issue of whether the ballot question is legal and whether they are entitled to declaratory and injunctive relief. Because this Court evenly divided as to the legality of the ballot question, the Court's unanimous *per curiam* order determined that Appellants were not entitled to relief and that the *status quo*, prior to the filing of the litigation, must be maintained. Thus, the order constitutes a valid and final judgment, as it disposed of all claims and of all parties. See Pa.R.A.P. 341(b)(1) (defining a final order as an order disposing of all claims and of all parties).

Respectfully, Appellants and the Justices in support of reversal are misguided when they suggest that there was no final judgment on the merits because this Court did not by majority decision definitively answer whether the ballot question, as submitted by the Secretary, was illegal.

While factually distinguishable and not dispositive, we find persuasive the United States Supreme Court's sentiment, observed more than 100 years ago, that:

[A court's judgment] is not the less expressive of the decision of the court upon the merits of the petitioner's claim in the case because it is rendered upon an equal division of opinion among the judges. The fact of division does not impair the conclusive force of the judgment, though it may prevent the decision from being authority in other cases upon the question involved. The judgment is that of the entire court, and is as binding in every respect as if rendered upon the concurrence of all the judges.

Hartman v. Greenhow, 102 U.S. 672, 675–76, 26 L.Ed. 271 (1880) (citations omitted). Stated succinctly, that the parties to this appeal do not have a definitive answer to the legal inquiry of whether the ballot question is invalid most certainly does not mean that the issue was not litigated and finally disposed of by this Court's September 2nd unanimous *per curiam* order.

The following illustrates the point. When this Court evenly divides on a legal issue presented in an appeal, we enter a final *per curiam* order affirming the lower court's judgment— an action which maintains the *status quo* of the matter prior to the filing of the appeal in this Court. See, e.g., Gov't Employees Ins. Co. v. Ayers, 610 Pa. 205, 18 A.3d 1093 (2011). Similarly, if the Court accepts extraordinary jurisdiction over a case where no judgment has been entered by a lower tribunal and we deadlock, then we enter a final *per curiam* order that maintains the *status quo* of the matter prior to the filing of the lawsuit, as occurred in this case. See Creamer, supra. In both situations, the moving party failed to convince a majority of the Court to take affirmative action. Because the Court in this circumstance cannot grant relief, relief is denied by operation of law, and the *status quo* is maintained, which in this case results in the constitutional amendment as advertised remaining on the November 8, 2016 general election ballot.

It is indisputable that any opinion attached to these *per curiam* orders has no precedential value; it is equally indisputable that the orders are nonetheless binding, final orders. See Commonwealth v. Bomar, 573 Pa. 426, 826 A.2d 831, 843 n.13 (2003) ("While the ultimate order of a plurality opinion, *i.e.* an affirmance or reversal, is binding on the parties in that

particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.") (*quoting Interest of O.A.*, 552 Pa. 666, 717 A.2d 490, 496 n. 4 (1998) (opinion announcing judgment of the court)); see also Pa.R.A.P. 341(b)(1) (defining a final order as "any order that ... disposes of all claims and of all parties"). Any purported distinction between the finality of orders entered as a result of a divided decision of this Court in its appellate jurisdiction versus orders entered as a result of a deadlock in an original jurisdiction matter constitutes the proverbial "red herring." In both scenarios, a final judgment is entered maintaining the *status quo* and precluding further litigation among the parties to that action. Significantly, the Commonwealth Court cogently noted that this conclusion derives from the express language set forth in this Court's September 16[th] order denying reconsideration, which a majority of this Court joined. See Commonwealth Court Slip Op. at 9 ("The Supreme Court has held that [Appellants'] issues and claim have been finally adjudicated. This [c]ourt may not revisit that holding.").

Our proposed disposition is not contrary to County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 544 Pa. 541, 678 A.2d 355 (1996), upon which the Justices in support of reversal rely. County of Berks held that an order of this Court, unaccompanied by an opinion, which denied a party's request for extraordinary relief did not constitute an adjudication on the merits for purposes of *res judicata.* Id. at 359 (stating that "we now hold that where this [C]ourt has issued an order without opinion denying extraordinary relief, that order alone is insufficient to establish that there has been a full and final adjudication of the claims raised"). Conversely, here, this Court issued an order *granting* Appellants' emergency application for extraordinary relief, the parties litigated the issues through briefing, the Court issued multiple opinions on the legal issue presented, and this Court entered a final order which disposed of all the claims in the case and resulted in the denial of relief to Appellants. It cannot be ignored that this Court's grant of extraordinary relief pursuant to 42 Pa.C.S. § 726 assumes jurisdiction over the case so that we

may enter a final order. An order denying extraordinary jurisdiction, on the other hand, merely refuses to allow invocation of our jurisdiction to hear the case at that point in the proceeding. Thus, County of Berks is not dispositive for we cannot equate our grant of extraordinary jurisdiction in this case and the extensive litigation that occurred thereafter with a single order denying extraordinary relief.

Further, contrary to the position of the Justices in support of reversal, Appellants are not denied any rights by this proposed disposition. Justice Wecht's assertion that "today's reappearing deadlock denies Appellants their right to a merits decision by the courts of this Commonwealth," Opinion in Support of Reversal, Wecht, J., at 422, 150 A.3d at 30, completely ignores what occurred in this case. Appellants were given every opportunity to have the Commonwealth Court adjudicate the substance of their legal challenge to the ballot question, but Appellants voluntarily and purposefully waived such opportunity by seeking this Court's extraordinary jurisdiction pursuant to Section 726 of the Judicial Code minutes after their Commonwealth Court action was filed, thereby forfeiting their right to appellate review of an original jurisdiction decision. The result Appellants received, *i.e.*, a final judgment from this Court and no substantive review by the Commonwealth Court, was the direct result of their own tactical litigation plan.

Further, both Appellants and the Justices in support of reversal disregard cavalierly this Court's Article V, Section 2(a)'s supremacy power. Indeed, there simply can be no question that Article V, Section 2(a) vests this Court with the supreme judicial power of the Commonwealth. Appellants provide no authority, as none exists, that would allow them to relitigate their claims in a lower tribunal after this Court had granted the extraordinary relief they sought concerning jurisdiction and then proceeded to enter a final order in the matter.

In her Opinion in Support of Reversal, Justice Todd opines that "[w]ith today's inaction by this Court, it appears that the present parties, and more importantly the public, will go to the polls on November 8 without receiving an answer to that

410

fundamental question [as to whether the ballot language satisfies constitutional standards for clarity]." Opinion in Support of Reversal, Todd, J., at 418, 150 A.3d at 28. Regardless of the significance of the underlying challenge to the ballot question at issue, this Court cannot create remedies where the law does not so provide.

This Court also should not be influenced by newspaper editorials or polls that are not part of the record before us and are not in any way pertinent to the narrow legal issue presented regarding the preclusive effect of this Court's September 2nd order. See Opinion In Support of Reversal, Wecht, J., at 422–23, 150 A.3d at 30–31 (citing a recent poll by Franklin & Marshall College, and various published editorials). This Court should not be concerned with matters of public opinion, but only matters of legal significance to issues that are properly presented by the parties. References to commentary regarding whether the proposed constitutional amendment should, in fact, be passed have no place in appellate court opinions deciding a discrete legal issue. These practices are misguided at best and dangerous at worst.

It is for these reasons that we would affirm the order of the Commonwealth Court.

Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justices Donohue and Mundy join this opinion.

## OPINION IN SUPPORT OF REVERSAL

### JUSTICE TODD

Underlying the present appeal is the yet-unresolved question of whether the ballot language—seeking to raise the mandatory retirement age of judges and justices from 70 to 75—fairly, completely, and accurately apprises the voters of the constitutional change they are being asked to approve. When we last faced this question in Sprague I [1], I came to the

1. Sprague v. Cortés, 145 A.3d 1136, 2016 WL 4595403 (Pa. 2016) ("Sprague I").

considered conclusion that, in failing to inform the voters that they were increasing the mandatory retirement age, not imposing a mandatory retirement age for the first time, this ballot language was unconstitutionally misleading.[2, 3] However, our Court split 3–3 in that case, issuing an order that we were "without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained." Sprague I (*per curiam* order). As a result, regardless of what one concludes about the merits of the important constitutional question at issue, we manifestly did not answer that question. Nevertheless, those Justices in favor of affirmance would transmogrify our non-decision into a preclusive ruling on the merits, and affirm the erroneous Commonwealth Court order below. See Opinion in Support of Affirmance ("OISA"). By stark contrast, and for the following reasons, I would reverse the Commonwealth Court's order and remand for further proceedings.

As noted by the OISA, the constitutional challenge to the ballot language was brought by Appellants in the Commonwealth Court, and this Court assumed extraordinary jurisdiction in Sprague I, culminating in a *per curiam* order from this Court. As the Court was deadlocked—with three Justices concluding Appellants were correct in their claim that the ballot language was misleading and three Justices concluding they were not—we could agree on only one thing, the following order:

AND NOW, this 2nd day of September, 2016, the Court being evenly divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained. See

2. The ballot question states:

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

3. See Sprague I (Opinion in Support of Granting Plaintiffs' Application for Summary Relief and Denying Defendant's Application for Summary Relief by Todd, J., joined by Dougherty, J., and Wecht, J., in part).

Creamer v. Twelve Common Pleas Judges, 443 Pa. 484, 281 A.2d 57 (1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter).

Sprague I (*per curiam* order). After this Court subsequently declined to remand the matter to the Commonwealth Court[4], Appellants refiled the same constitutional challenge in that court. The Commonwealth Court rejected this challenge, without addressing the merits, and the issue presently before us is whether that court erred in rejecting Appellants' new filing on the grounds that this Court already decided the matter in Sprague I.

For reasons of efficiency and fairness, courts rightly preclude the same parties from re-litigating questions that have already been decided. Here, citing our prior order in Sprague I, the Commonwealth Court rejected Appellants' present suit under the doctrine of *res judicata*. In doing so, it set forth that doctrine's basic and well established governing principles:

> [It is] a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any *final, valid judgment on the merits* by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.

Sprague v. Cortés, 517 M.D. 2016 at 5 (Pa. Cmwlth. filed Oct. 5, 2016) (quoting R/S Fin. Corp. v. Kovalchick, 552 Pa. 584, 716 A.2d 1228, 1230 (1998)) (emphasis added). Stated differently, to apply the doctrine of *res judicata*, "the issue or issues must have been actually litigated and determined by a valid and final judgment." County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 544 Pa. 541, 678 A.2d 355, 359 (1996).

4. This author and Justice Wecht dissented.

While there is no doubt that our order in Sprague I was final in the sense that it was this Court's concluding pronouncement in the matter before us, it was decidedly not *a judgment on the merits*, nor did we *actually litigate or determine* anything. In the prior matter—as now—Appellants posed a simple legal question: does the ballot language satisfy constitutional standards for clarity? This divided Court could not and did not answer that question. That observation, at its simplest, answers the *res judicata* question; and the case cited by the OISA, which I discuss below, does not alter that analysis. It was thus plainly erroneous, in my view, for the Commonwealth Court to bar Appellants' present suit on the grounds that we *had* answered the constitutional question.

This straightforward interpretation of our prior disposition is also dictated by the language of our *per curiam* order in Sprague I. Critically, we noted therein that, in light of our 3–3 deadlock, we were "without authority to grant relief." Appellee, the Commonwealth Court, and the OISA ignore the import of this explicit qualifying language. Because of the deadlock in Sprague I, this Court could agree on only one thing: that we were unable to act. Contrary to the suggestions of the OISA, we did not "declin[e]" relief, nor did we decide Appellants were "not entitled to relief." See OISA at 405–06, 150 A.3d at 20–21. Instead, we determined that we lacked *authority* to grant relief. A court lacking the authority to act lacks the *ability* to act. Indeed, this point was explicitly made in Creamer v. Twelve Common Pleas Judges, 443 Pa. 484, 281 A.2d 57 (1971), the sole precedent we cited in our order in Sprague I. There, analogizing our 3–3 deadlock in that case to a tribunal containing two members who were likewise deadlocked, we stated:

> When a legal or semi-legal tribunal consists of only two members, *neither one of them can perform an affirmative act changing, or which may change, an existing condition; for it takes a majority of the whole body to do this, and one is not a majority of two.*

Id. at 58 (quoting In re First Cong. Dist. Election, 295 Pa. 1, 144 A. 735, 739 (1928)) (internal quotation marks omitted and

emphasis added). Thus, our declaration in Sprague I that we lacked the authority to act, along with our citation to Creamer, demonstrates that we took no substantive action—we were unable to act on the merits.

Moreover, if there could be any ambiguity—and there is none—about the effect of our pronouncement that we were "without authority to grant relief," it was resolved by our statement immediately following: "the *status quo* of the matter prior to the filing of the lawsuit is maintained." These words can only mean that, because of our deadlock, we intended to return the parties to the status they occupied at a time prior to our intervention. Again, our citation to Creamer proves this. Therein, as in Sprague I, we sat in our original jurisdiction, and stated:

> It is a universal rule that when a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in statu[s] quo.

Id. at 58 (quoting In re First Cong. Dist. Election, 144 A. at 739) (internal quotation marks omitted). That point bears emphasis: we stated that the *subject-matter* with which a deadlocked original jurisdiction court is dealing *must remain in the status quo.* Obviously, prior to our intervention in Sprague I—the *status quo*—the parties were unconstrained by *any* court's pronouncements on the constitutional issue at hand, and Appellants were unencumbered by any judgment on the merits. Yet, the OISA looks past these clear declarations of non-action and discovers not just a judgment, but *a judgment on the merits.* Gazing through the looking glass, the OISA strains to conclude that, in Sprague I, we simultaneously issued a judgment on the merits *and* returned the parties to the *status quo.* The illogic of this position is patent. A court can issue a judgment on the merits. A court can restore the *status quo* prior to litigation. It cannot do both at the same time.

Thus, basic principles of *res judicata* and the explicit text of our order should be the simple end of this appeal, and indicate summary reversal. However, even were I to accept the characterizations of the OISA that our order in Sprague I was a

*denial* of extraordinary relief—rather than a simple dead-locked inability to act and restoration of the *status quo*—this Court has explicitly held that an order denying extraordinary relief, without more, has no *res judicata* effect. In County of Berks, supra, we addressed the contention that our denial of an application for extraordinary relief precluded a latter suit by the same parties on the same question in the Common-wealth Court. Finding the matter to be one of first impression, we surveyed other jurisdictions, and noted:

> The general rule is that where the extraordinary jurisdiction of a court is unsuccessfully invoked and the court does not expressly adjudicate the matter on the merits, then there is no preclusive effect and the petitioning party is free to pursue his claim in any appropriate forum.

Id. at 359 (citing cases). Recognizing that there are reasons beyond the lack of legal merit for this Court to deny extraordinary relief, we held that an *order without opinion* denying such relief had no preclusive effect:

> Therefore, we now hold that where this court has issued an order without opinion denying extraordinary relief, that order alone is insufficient to establish that there has been a full and final adjudication of the claims raised. Thus, because the bar of res judicata is inapplicable to this matter, Appellees' first claim does not provide a basis for affirming the decision of the Commonwealth Court.

Id. Thus, even if our order in Sprague I were viewed as a denial of relief, on this additional precedential authority, the Commonwealth Court erred in rejecting Appellants' suit on the basis of res judicata.[5]

---

5. The OISA attempts to evade the import of County of Berks by noting that, in that case, we issued an order denying an application for extraordinary relief, whereas, in Sprague I, we assumed extraordinary jurisdiction, and ultimately issued an order which the OISA contends had the effect of denying extraordinary relief. OISA at 408–09, 150 A.3d at 22. From the point of view of the parties, and, more critically, for purposes of *res judicata*, I see no distinction. In either scenario, relief is denied by simple order. Moreover, I disagree with the OISA's superficial contention that the issuance of multiple opinions in Sprague I, which even the OISA recognizes are non-precedential, see OISA at 402,

The OISA cites Hartman v. Greenhow, 102 U.S. 672, 26 L.Ed. 271 (1880), in support of its contention that our *per curiam* order was a "final judgment on the merits for purposes of *res judicata.*" OISA at 406–07, 150 A.3d at 21. First, caselaw from the Supreme Court of the United States does not control our Court's determination of the preclusive effect of our orders on the adjudication of state constitutional claims, inasmuch as our Court is the final arbiter of such pure questions of Pennsylvania law. Moreover, as also observed by Justice Wecht [6], this case does not establish the novel jurisprudential proposition offered by the OISA.

In Hartman v. Greenhow, the petitioner sought a writ of *mandamus* from the Supreme Court of Appeals of Virginia to compel the treasurer of Richmond to accept petitioner's tender of state issued bonds as payment of his state tax obligations without deducting additional state tax from their redemptive proceeds. Petitioner claimed that the statute under which the treasurer asserted authority to make this deduction violated the Contract Clause of the United States Constitution. The Virginia Supreme Court divided 3–3 on the merits of that question, which, under Virginia law, constituted a denial of the issuance of the writ. The narrow jurisdictional question which the United States Supreme Court addressed as a threshold matter, from which the OISA's quotation derives, was whether the split decision of the Virginia Supreme Court constituted "a final judgment or decree" under the Judiciary Act of 1787, and the federal high Court concluded that it did since the effect of the judgment was to deny the writ of *mandamus* and to finally conclude that litigation. Importantly, though, the high Court did not purport to opine on whether the doctrine of *res judicata* barred the parties from *relitigating* the issue of the propriety of the denial. Indeed, the high Court went on in its opinion to conclude that the statute was in fact repugnant to the United States Constitution and granted petitioner relief. The high Court's ruling, therefore,

150 A.3d at 18, makes any difference for purposes of application of County of Berks. Our order in Sprague I was issued purely under the authority of Creamer.

6. See Opinion in Support of Reversal (Wecht, J.) at 420–21 n.2, 150 A.3d at 29–30 n.2.

has no bearing on the question of the preclusive effect of an order of a state's highest court on further litigation in the tribunals of that state, which is the issue we are considering in the present appeal.

Finally, I must respond to the OISA's waiver and constitutional structure arguments. The OISA claims that Appellants' choice to seek extraordinary relief from our Court at the time they originally commenced their action in the Commonwealth Court somehow precluded them from further seeking relief in the Commonwealth Court after our Court could not render a decision on their claims. The OISA deems Appellants' effort to seek a final determination from this Court regarding a paramount question of constitutional interpretation "tactical litigation," contending:

> Appellants were given every opportunity to have the Commonwealth Court adjudicate the substance of their legal challenge to the ballot question, but Appellants voluntarily and purposefully waived such opportunity by seeking this Court's extraordinary jurisdiction pursuant to Section 726 of the Judicial Code ... thereby forfeiting their right to appellate review of an original jurisdiction decision.

OISA at 409, 150 A.3d at 22. Respectfully, what Appellants were seeking from the Commonwealth Court with their new filing in this matter was *not* appellate review of our *per curiam* order, but, rather, what they have always requested: an adjudication on the merits.

When Appellants asked that our Court assume extraordinary jurisdiction, they did so with the reasonable expectation our Court would resolve the constitutionality of this ballot question with a ruling on the merits of their claims; however, our Court proved unable to act. The OISA's assertion that Appellants' right to have this matter now heard in the Commonwealth Court was forfeited, even though our Court was unable to render a decision on the merits of their claims, is unsupported by either Article V, Section 2(a) of our Constitution, the plain language of Section 726 of the Judicial Code, prior precedent from our Court, or the language of our *per curiam* order in Sprague I. Indeed, Section 726 affords our

Court maximum flexibility after we have exercised our extraordinary jurisdiction to "otherwise cause right and justice to be done." 42 Pa.C.S. § 726. Here, causing right and justice to be done requires an adjudication of this important issue on the merits.

Furthermore, while it is certainly true that Article V, Section 2(a) of our Constitution vests the supreme judicial power of the Commonwealth in this Court, as the OISA avers, the vesting of such great power in our Court also creates the highest obligation to exercise that power to achieve fundamental justice, not only for the individual litigants, but for all of the people of this Commonwealth. Instead, we are permitting the Commonwealth Court's erroneous decision on *res judicata* to stand, and a constitutional question to go unanswered.

Today, as in Sprague I, this Court is deadlocked, for reasons I again find hard to fathom. Although the present issue before us is a purely procedural one, by contrast, the underlying constitutional question could not be more important, as it concerns the people's power to amend their Constitution, and specifically the question of whether they have been fairly, completely, and accurately apprised of a proposed change to our charter. With today's inaction by this Court, it appears that the present parties, and more importantly the public, will go to the polls on November 8 without ever receiving an answer to that fundamental question.

Justices Dougherty and Wecht join this opinion.

## OPINION IN SUPPORT OF REVERSAL

### JUSTICE DOUGHERTY

I view the current controversy as different from the procedural question raised on motion for reconsideration and decided by this Court on September 16, 2016. At this juncture, the issue is whether res judicata applies, and as this Court has not answered the substantive question originally presented— whether the ballot language at issue is unconstitutionally

misleading—I do not believe a decision on the merits has been rendered by the Court.

Justices Todd and Wecht join this opinion.

## OPINION IN SUPPORT OF REVERSAL

JUSTICE WECHT

This Court recently considered—but deadlocked on—a challenge to the wording of the November 2016 general election ballot question. That question asks voters whether the judicial retirement age mandated in our Constitution should be amended. Appellants alleged that the ballot question as drafted misleads and deceives voters into believing that they are imposing a mandatory retirement age for the first time, when in fact a "yes" vote would *raise* the existing judicial retirement age from 70 to 75. Appellants sought to enjoin Appellee Cortés from issuing general election ballots that contain the deceptively worded question.

Although this Court assumed plenary jurisdiction over Appellants' action pursuant to 42 Pa.C.S. § 726, we did not (indeed, we could not) issue a final decision on the merits. As explained in our September 2 order, three Justices favored denying Appellants' application for relief and dismissing the complaint with prejudice, while the other three Justices would have granted Appellants' application for relief and permanently enjoined Appellee from placing the challenged language on the ballot.[1] Being equally divided, we stood deadlocked on the merits of the dispute. Our unanimous *per curiam* order accordingly noted that "this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained." *Per Curiam* Order, 9/2/2016, at 1.

1. See Sprague v. Cortés, 145 A.3d 1136, 2016 WL 4595403 (Pa. 2016); Opinion In Support Of Denying Plaintiffs' Application For Summary Relief And Granting Defendant's Application for Summary Relief (Baer, J.); Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief (Todd, J.); Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application For Summary Relief (Wecht, J.).

In view of our deadlock, Appellants pursued merits adjudication by refiling their complaint for declaratory and injunctive relief in the Commonwealth Court. That court dismissed the complaint, holding that the doctrine of *res judicata* bars Appellants from litigating their still-unadjudicated constitutional challenge. In defending that dismissal, the Opinion in Support of Affirmance ("OISA") misconstrues our *failure* to resolve Appellants' challenge on the merits as an *adjudication* on the merits. It is nothing of the kind. I disagree with the OISA's view, which attempts incorrectly to deploy our September 2 deadlock as a bootstrap to affirm the Commonwealth Court, notwithstanding our utter inability to reach a decision on the merits of the parties' dispute.

The doctrine of *res judicata*, also known as claim preclusion, bars a subsequent action between the same parties on any claim that was the subject of an earlier adjudication on the merits. Balent v. City of Wilkes–Barre, 542 Pa. 555, 669 A.2d 309, 313 (1995) ("Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The dispositive question here is whether our September 2 order constituted a full and final adjudication of Appellants' constitutional challenge. It plainly did not.

I agree with the Commonwealth Court that the claims at issue and the parties *sub judice* are identical to those in the prior litigation. See Sprague v. Cortés, 517 M.D. 2016, slip op. at 6. Nevertheless, *res judicata* does not bar Appellants from litigating their claims, because neither this Court nor any other court has finally adjudicated Appellants' constitutional challenge to the wording of the November ballot question. See County of Berks ex rel. Baldwin v. Penna. Labor Relations Bd., 544 Pa. 541, 678 A.2d 355, 359 (1996) ("It is axiomatic that in order for ... *res judicata* to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment.").[2]

2. In an attempt to obscure our decisional deadlock and expand our September 2 order into a final adjudication on the merits, the OISA

*Res judicata* expresses a jurisprudential principle designed to avoid never-ending litigation. It embraces the common sense proposition that a claim finally settled by a court of competent jurisdiction remains settled. *Res judicata* addresses the law's need for finality and precludes multiplicity of actions upon identical questions.[3] What the doctrine does not do is

invokes a decision of the United States Supreme Court that does not support the OISA's position.

Specifically, the OISA relies upon Hartman v. Greenhow, 102 U.S. 672, 26 L.Ed. 271 (1880), a case that does not concern, discuss, or even mention the doctrine of *res judicata*. See OISA at 406–07, 150 A.3d at 21. Although Hartman involved an equally divided state court, it did not address any preclusive effect of that deadlock. Instead, the issue in Hartman was whether the United States Supreme Court had jurisdiction over the appeal, *i.e.*, whether it was a "final judgment or decree" as defined by the Judiciary Act of 1789. Id. at 674. The portion of Hartman quoted by the OISA (see OISA at 407, 150 A.3d at 21) simply explains why the state court's deadlock was amenable to the U.S. Supreme Court's jurisdiction.

Beyond that, the OISA is left with little but its own conclusory assertion that our opinion "completely ignores" the "final judgment" in this case (Id. at 409, 150 A.3d at 22), a "final judgment," such as it is, which does not adjudicate the lawsuit's claims. But just in case, suggests the OISA, Appellants' inability to obtain an adjudication here is, after all, somehow their own fault, the "result of their own tactical litigation plan." Id. at 409, 150 A.3d at 22–23.

3. The OISA ignores the obvious fact that not all "final" decisions are preclusive for *res judicata* purposes. It bears repeating that *res judicata* applies only when there has been a final adjudication **on the merits**. See Balent, 669 A.2d at 313. For example, this Court has held that our denial of an application for extraordinary relief is not a final adjudication **on the merits**, and "the petitioning party is free to pursue his claim in any appropriate forum." County of Berks ex rel. Baldwin, 678 A.2d at 359. Similarly, when we issue an order explaining that "this Court is without authority to grant relief" to either party (*Per Curiam* Order, 9/2/2016, at 1), we have not fully and finally adjudicated the litigants' claims on the merits.

The OISA distinguishes County of Berks ex rel. Baldwin from the instant matter on the basis that we assumed plenary jurisdiction over Appellants' action and the parties "litigated the issues through briefing." OISA at 408–09, 150 A.3d at 22. That is irrelevant. The critical inquiry is whether our September 2 order was a full and final merits adjudication of Appellants' constitutional challenge. The OISA concedes that "the Court issued multiple opinions on the legal issue presented," none of which gained the support of a majority of the Justices. Id. at 409–10, 150 A.3d at 22. How this Court managed to adjudicate Appellants' claim on the merits while simultaneously failing to resolve "the legal issue presented" is beyond my understanding.

encroach upon a litigant's fundamental right to have his or her case decided on the merits.

As the debate over the starkly misleading November ballot language intensifies in the court of public opinion, today's reappearing deadlock denies Appellants their right to a merits decision by the courts of this Commonwealth. As written, the ballot question is patently deceptive (apparently by design), thereby depriving Pennsylvania voters of their inalienable right to amend our Constitution as they see fit. Many share my concerns, including (it seems) half the voting Justices of this Court, Secretary Cortés himself (at least at one point),[4] and numerous commentators.[5]

A recent poll conducted by Franklin & Marshall College reveals, as many had assumed, that the ballot question's

**4.** In a prior filing of record, Appellee Cortés himself took the position that failing to inform voters that the current judicial retirement age is 70, "would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all." See Answer of Secretary of the Commonwealth Pedro A. Cortés, 29 MM 2016. For reasons unknown and undisclosed, Secretary Cortés seems to have changed his mind quite completely. Nonetheless, the OISA has exaggerated the Secretary's role here by asserting that he "framed" the misleading ballot question. OISA at 400-01, 150 A.3d at 17. He did not frame it; indeed, he initially opposed it, and then later chose to acquiesce in it. The distinction for artful draftsmanship is owed not to the Secretary but to the General Assembly. See H.R. 783 2015 (directing the Secretary to remove the previously drafted ballot question from the April 26, 2016 primary election ballot and to place the language now at issue on the November 8, 2016 general election ballot).

**5.** See, e.g., Vote 'No' on Question to Raise Judges' Retirement Age, Philly, http://www.philly.com/philly/opinion/editorials/20161011_DN_editorial_Vote_No_on_question_to_change_judges_retirement_age.html ("We agree with those who filed the suits challenging the wording of the ballot question. We believe it is deceitful—and deliberately so, designed to bamboozle voters[.]") (last visited Oct. 20, 2016); Howard J. Bashman, Lessons From Pa.'s Judicial Retirement Age Ballot Fiasco, The Legal Intelligencer, http://www.thelegalintelligencer.com/id=1202769603634/Lessons-From-Pa-S-Judicial-Retirement-Age-Ballot-Fiasco/?slreturn=20160920113149 ("Pennsylvania's legislature has devised a masterful strategy to avoid the defeats experienced in numerous other states when voters are asked whether existing judicial mandatory retirement ages should be increased—simply don't tell voters that the constitutional amendment will have the effect of increasing the mandatory judicial retirement age.") (last visited Oct. 20, 2016).

misleading language places a heavy thumb on the scales of the amendment process.[6] The polling indicates that 64% of registered voters would vote "yes" to the question that will appear on the November ballot. But support for the amendment nosedives an astounding nineteen points to 45% when voters are presented with the question as Secretary Cortés himself originally phrased it, i.e., when voters are informed that in fact a judicial retirement age does currently exist and that it is 70.[7]

It is imperative that Pennsylvania's judiciary decide whether our Constitution tolerates a demonstrably misleading ballot question.[8] The question has been asked. It has not been

6.  Berwood A. Yost, For the Nov. 8 Ballot Question About Changing Pa. Judges' Retirement Age, Words Matter, PENNLIVE, http://www.pennlive. com/opinion/2016/10/for_the_nov_8_ballot_question.html (last visited Oct. 20, 2016).

7.  The OISA criticizes our reference to polling and commentary. OISA at 409–10, 150 A.3d at 23. This critique misconstrues our use of these sources. As the OISA itself recognizes (id. at 401–02, 150 A.3d at 18), today's dispute concerns a question of law: to wit, whether our September 2 per curiam order precludes Appellants' right to a merits adjudication on res judicata grounds. The material facts are undisputed. The litigation before us addresses a matter of substantial public importance and notoriety. In such circumstances, it is not only proper but indeed expected that jurists will marshal secondary sources (law review articles, news reports, commentary, etc.) to persuasive effect. There is no evidentiary record here which Justices of this Court can either refine or improve. There is a disagreement on a question of law. In this disagreement, jurists will employ the tools that are appropriate to the persuasive task at hand.

> We see here a perfect illustration of the importance of context. The argument is over the facts but not over the record. The opinions are trying to persuade us to put the dispute in one context rather than another. Until we do that, we don't know which law applies; we don't know how to construct analogies or make distinctions. ... Once we leave the domain of proof and enter that of persuasion, there is not a great deal that can be said in the abstract. What counts as persuasive depends on both the speakers and the listeners; it shifts over time and depends on the circumstances. It depends as well on the ability to present the case in a compelling manner. The court, like the rest of us, must be persuaded.

PAUL W. KAHN, MAKING THE CASE: THE ART OF THE JUDICIAL OPINION 146 (Yale Univ. Press 2016).

8.  The point is not that judges are unfit to serve after age 70. The legacies of Holmes, Brandeis, and countless other stars that shine in the judicial firmament suggest otherwise. The point is that our Constitution does not permit the General Assembly to load the dice, to hoodwink or infantilize the voters by crafting a ballot question calculated to deceive

answered. <u>See</u> <u>Marbury v. Madison</u>, 5 U.S. 137, 1 Cranch 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

Appellants turned to our courts with one straightforward question: Does the November ballot, as worded, violate Pennsylvania's Constitution? Today's decision prevents Appellants from receiving an answer to that question. They are entitled to one.

I would reverse the Commonwealth Court, and I would remand for further proceedings.

Justices Todd and Dougherty join this opinion.

and mislead. <u>See</u> Opinion in Support of Granting Plaintiffs' Application For Summary Relief And Denying Defendant's Application For Summary Relief (Wecht, J.), at 1–5 (September 2, 2016) (discussing requirements of constitutional amendment process).